UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEYVAN NASSIRI MOTLAGH, et al., <br><br>　　　　　　　　　Plaintiffs, <br><br>v. <br><br>MACY'S CORPORATE SERVICES, INC., et al., <br><br>　　　　　　　　　Defendants. | Case No.: 19-cv-00042-JLB <br><br>**ORDER ON MOTION FOR SETTLEMENT APPROVAL** <br><br><br><br>**[ECF No. 41]** |

Before the Court is a Motion for Settlement Approval filed by Plaintiff Keyvan Nassiri Motlagh, as guardian *ad litem* for Plaintiff Mahindokht Sanei Khansari, an incompetent individual. (ECF No. 41.) Having considered Plaintiff Motlagh's unopposed motion and the statements of counsel and Plaintiff Motlagh at the motion hearing, and for the reasons set forth below, the Court **GRANTS** the Motion for Settlement Approval.

### I.　BACKGROUND

This case arises from an escalator incident involving Plaintiffs Motlagh and Khansari at a Macy's department store in 2016. Plaintiffs allege that on June 17, 2016, they "fell on an escalator" while shopping at Macy's and suffered and continue to suffer "serious injuries to their persons." (ECF No. 1-2 at 9.) On June 1, 2018, Plaintiffs filed a complaint in San Diego Superior Court asserting general negligence and premises liability

causes of action against Macy's Corporate Services, Inc., Macy's Retail Holding, Inc., Macy's West Stores, Inc. ("Macy's") and Schindler Elevator Corporation ("SEC"). (*Id.* at 4, 8–9.) On January 8, 2019, Defendant SEC removed the case to the Southern District of California pursuant to 28 U.S.C. § 1441(b), removal based on diversity of citizenship. (ECF No. 1 ¶ 4.)

On February 12, 2019, the Court held a telephonic, counsel-only Case Management Conference ("CMC"). (ECF No. 11.) At the CMC, Plaintiffs' counsel informed the Court that Plaintiff Khansari was living in Iran and would be unable to fly to California to attend the March 4, 2019 Early Neutral Evaluation Conference ("ENE") due to her age and dementia. Notice of Plaintiff Khansari's dementia prompted the Court to raise concerns regarding Plaintiff Khansari's ability to adequately represent herself in the matter and whether a guardian *ad litem* was necessary.

On February 24, 2019, the parties filed a joint motion to excuse the attendance of Plaintiff Khansari at the ENE. (ECF No. 17.) In the joint motion, Plaintiffs provided that Plaintiff Khansari's physician had advised her to refrain from flying long distances due to her "various medical conditions." (*Id.* at 2.) A physician's note attached to the joint motion stated that Plaintiff Khansari was 91 years old and suffering from mild Bulbar Palsy. (ECF No. 17-1 at 2.) The Court granted the joint motion and excused Plaintiff Khansari from appearing at the ENE. (ECF No. 20.)

At the ENE on March 4, 2019, the Court again raised concerns regarding Plaintiff Khansari's ability to prosecute the case and whether a guardian *ad litem* needed to be appointed before Plaintiff Khansari could enter into any settlement agreement. The case settled shortly after the ENE on March 20, 2019. (ECF No. 23.) In their Notice of Settlement, the parties agreed that Court approval of the Plaintiff Khansari's settlement pursuant to Civil Local Rule 17.1 was necessary "in light of the circumstances . . . and the issues raised by the Court and all parties concerning competency." (*Id.* at 2.)

After a few procedural missteps, Plaintiff Motlagh moved to appoint herself as guardian *ad litem* for Plaintiff Khansari on June 19, 2020. (ECF No. 38.) In her declaration

in support of the motion, Plaintiff Motlagh declared that Plaintiff Khansari had "been having multiple health issues for years, including OCD and dementia." (ECF No. 38-1 ¶ 2.) Plaintiff Motlagh further declared that she was the only one of her siblings able to care for Plaintiff Khansari and had power of attorney for her in Iran. (*Id.* ¶¶ 3–5.) On July 7, 2020, the Honorable John A. Houston granted the motion and appointed Plaintiff Motlagh as guardian *ad litem* for Plaintiff Khansari. (ECF No. 39.)

On August 12, 2020, the Court issued a briefing schedule for Plaintiffs to file a motion for settlement approval pursuant to Civil Local Rule 17.1. (ECF No. 40.) On August 27, 2020, Plaintiff Motlagh filed the instant motion. (ECF No. 41.) No defendant filed an opposition to the motion by the September 4, 2020 response deadline. On October 2, 2020, Plaintiff Motlagh filed supplemental papers in support of the instant motion. (ECF Nos. 43; 43-1.)

On October 21, 2020, Judge Houston approved the parties' consent to Magistrate Judge Jill L. Burkhardt's jurisdiction to conduct all further proceedings and order entry of final judgment. (ECF No. 46.)

On December 8, 2020, the Court held a telephonic hearing regarding the instant motion. (ECF No. 49.) Plaintiffs' counsel, Shahbaz Rahbari, and Plaintiff Motlagh, in her capacity as guardian *ad litem* for Plaintiff Khansari, appeared at the hearing. (*Id.*)

## II.     LEGAL STANDARDS

District courts have a special duty to protect the interests of litigants who are minors or incompetent. *See* Fed. R. Civ. P. 17(c) (requiring that a district court "appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action"). In keeping with this duty, this District's Civil Local Rules provide that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR 17.1(a).

In the context of proposed settlements in cases with minor plaintiffs, the Ninth Circuit has instructed district courts to "conduct [their] own inquiry to determine whether

the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) ("[A] court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected."). Under *Robidoux*, a district court's settlement review is limited to whether the net amount distributed to the minor is fair and reasonable, considering the facts of the case, the minor's specific claim, and recovery in similar cases. 638 F.3d at 1181–82. *Robidoux* instructs that courts should not evaluate the fairness of the recovery by comparing the minor's proportion of the total settlement to the amounts designated for co-plaintiffs or counsel. *Id.* at 1182. The parties' proposed settlement should be approved "[s]o long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases." *Id.* District courts have extended the *Robidoux* inquiry to cases involving the approval of an incompetent plaintiff's settlement. *E.g.*, *Banuelos v. City of San Bernardino*, Case No. EDCV 13-736-GW(DTBx), 2018 WL 6131190 (C.D. Cal. Apr. 26, 2018); *Mugglebee v. Allstate Ins. Co.*, Case No.: 14-CV-2474 JLS (JMA), 2018 WL 1410718 (S.D. Cal. Mar. 21, 2018); *Smith v. City of Stockton*, 185 F. Supp. 3d 1242 (E.D. Cal. 2016).

The *Robidoux* court expressly limited its holding to cases involving the settlement of federal claims and did "not express a view on the proper approach for a federal court to use when sitting in diversity and approving the settlement of . . . state law claims." 638 F.3d at 1179 n.2. Nevertheless, some district courts have applied *Robidoux* when evaluating the settlement of a minor's state law claims. *Mitchell v. Riverstone Residential Grp.*, No. Civ. S–11–2202 LKK/CKD, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) (collecting cases). Others have either found *Robidoux* inapplicable when evaluating the settlement of a minor's state law claims or have "plac[ed] more weight" on state law standards while also "consider[ing] the guidance provided *Robidoux*." *Id.* at *2; *accord Doe v. Lincoln Mil. Prop. Mgmt. LP*, Case No.: 3:20-cv-00224-GPC-AHG, 2020 WL

5587488, at *4 (S.D. Cal. Sept. 18, 2020), *adopted by* 2020 WL 5810168 (S.D. Cal. Sept. 30, 2020).

Like Ninth Circuit precedent, California law requires court approval of an incompetent plaintiff's settlement, and the California Probate Code provides the applicable statutory scheme. *See* Cal. Prob. Code §§ 3600 *et seq*. Courts applying California law must "evaluate the reasonableness of the settlement and determine whether the compromise is in the best interests of the minor [or incompetent]." *A.M.L. v. Cernaianu*, LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014); *see also* Cal. Prob. Code § 3600(a). In contrast with *Robidoux*, however, a court applying California law must approve any reasonable expenses, costs, and attorney's fees to be paid from the settlement. *Compare* Cal. Prob. Code § 3601(a), *with Robidoux*, 638 F.3d at 1181 ("[T]he district court's special duty . . . requires only that the district court consider whether the net recovery to the minor plaintiff is fair and reasonable, without regard to . . . what they have agreed to pay plaintiffs' counsel.").

Here, the Court is sitting in diversity, and Plaintiff Khansari's general negligence and premises liability causes of action are brought solely pursuant to California law. (ECF Nos. 1 ¶¶ 4–5; 1-2 at 8–9.) Because all of Plaintiff Khansari's claims arise under state law, the Court will apply California law to its analysis. However, the Court finds persuasive the line of cases in this District that apply California law when approving the settlement of a minor's or incompetent's state law claims but also consider the guidance in *Robidoux*, "insofar as it provides a framework for evaluating the reasonableness and fairness of a [minor's or incompetent's] settlement." *Lobaton v. City of San Diego*, Case No.: 3:15-cv-1416-GPC-DHB, 2017 WL 2610038, at *2 (S.D. Cal. June 16, 2017); *see also Lincoln Mil. Prop. Mgmt. LP*, 2020 WL 5587488, at *4 ("Because the substantive claims in this case are governed by California law, the Court will review the settlement with an eye towards the state standard, which focuses on the 'best interests of the minor.' However, to ensure that all potentially relevant factors are considered, the Court will also apply the *Robidoux* standard . . . ."); *Napier v. San Diego County*, Case No.: 3:15-cv-00581-CAB-(KSC), 2017

WL 5759803, at *2 (S.D. Cal. Nov. 28, 2017) (applying "California law and focus[ing] on whether 'the compromise is sufficient to provide for the minor's injuries, care and treatment" while also "consider[ing] the guidelines set forth in *Robidoux* . . . ."). In any event, as discussed below, the Court finds that the proposed settlement, as modified during the hearing, satisfies both Ninth Circuit and California standards. *See also Lincoln Military Prop. Mgmt. LP*, Case No.: 3:20-cv-00224-GPC-AHG, 2020 WL 5810168, at *3 ("District courts disagree as to whether the *Robidoux* standard applies to proposed settlements of state law claims, but the Court need not decide whether *Robidoux* controls if the settlement meets both federal and state standards.").

### III.  DISCUSSION

**A.  The Settlement Agreement and Net Settlement Amount**

To facilitate the Court's review of the Plaintiff Khansari's settlement, the Court requested that the Motion for Settlement Approval include a California Petition to Approve Compromise of Disputed Claim or Pending Action or Disposition of Proceeds of Judgment for Minor or Person with a Disability ("MC-350"). To the instant motion, Plaintiff Motlagh attached a completed MC-350, which provides that Defendants will pay Plaintiff Khansari a gross settlement amount of $12,500, with $10,000 from Defendant Macy's and $2,500 from Defendant SEC. (ECF No. 41-1 ¶ 11.) Plaintiff Khansari will receive the $12,500 award as a lump sum, less a $1,413.72 lien owed to Medicare. (*Id.* ¶¶ 11(c), 13(b)(3); *see also* ECF No. 42-1 at 2.) The Settlement Agreement executed between Plaintiff Motlagh, as guardian *ad litem* for Plaintiff Khansari, and Defendants matches the representations set forth in the MC-350. (*See* ECF No. 41-5 ¶¶ 3(a), 4.1, 4.6.) In consideration for the $12,500 award, Plaintiff Khansari agrees to a general release all claims against Defendants relating to the subject incident. (*Id.* ¶ 4.1.)

The MC-350 further provides that attorney's fees and expenses will be subtracted from the gross settlement amount. For his services, Mr. Rahbari initially requested $5,038.47 in fees and $547.81 in costs. (ECF No. 41-1 ¶ 14(a).) However, during the hearing and as further explained below, Mr. Rahbari orally amended his request to a 40%

fee award, or $5,000 in fees. Therefore, after subtracting $5,547.81 in fees and costs from the gross settlement, Plaintiff Khansari's net settlement equals $6,952.19.

Considering the facts of this case, the Court finds that the settlement is fair and reasonable and serves in Plaintiff Khansari's best interests. First, the settlement allows for the certain recovery as opposed to the uncertainty of continued litigation. Although this holds true with most settlements, here, the risks to Plaintiff Khansari of proceeding with the case were not insignificant. As earlier noted by the Court during the CMC, there were a number of complexities that would have made Plaintiff Khansari's prosecution of the case increasingly difficult. For one, proving that any Defendant was liable for her injuries, even assuming that an escalator malfunction had caused her fall, posed a large hurdle. As to damages, Plaintiff Khansari has returned[1] indefinitely to Tehran, Iran and would have been unable to travel to California for an independent medical examination or to be deposed because of her age and health. Additionally, Plaintiffs attributed a progression in Plaintiff Khansari's dementia to the fall, but none of her medical records causally tied the fall to an acceleration in dementia.

Plaintiff Motlagh acknowledged these and additional uncertainties in her declaration in the support of the instant motion, stating:

> [B]ased upon the complexities of this case . . . the proposed and/or received [settlement] amounts are reasonable.
>
> The various and complex issues . . . include the following: a) medical examinations and treatments received by me, but mainly my mother, b) expenses paid for . . . these services by MediCal and Medicare, c) issue of liability, d) risks and costs involved in proceeding with this matter, e) us traveling to and residing in Tehran, Iran, f) inability/complexity of my mother flying/returning to Southern California, g) my understanding that my mother's medical providers did not relate the subject incident to the various

---

[1] Plaintiff Motlagh's declaration in support of her Motion for Guardian *Ad Litem* provides that she took Plaintiff Khansari to their residence in Tehran, Iran, in September 2018. (ECF No. 38-1 ¶ 2.)

examinations and treatments that she otherwise received, mainly in connection with her mental health issues and OCD . . . and h) various experts required to properly litigate this matter.

(ECF No. 41-2 ¶¶ 5–6.) Plaintiff Motlagh specified that, other than the medical records from Plaintiff Khansari's emergency room visit immediately after the fall and one follow-up appointment with her primary care physician, no other medical records "relate[d] any of the injuries to the subject incident." (*Id.* ¶ 7.) Plaintiff Motlagh also acknowledged that it would be difficult to connect Plaintiff's Khansari's current medical issues to the fall because "Medicare ha[d] not related any of [Plaintiff Khansari's] current medical issues to [the] incident" or "request[ed] reimbursement of any such expenses advanced," other than for the emergency room visit and one follow-up appointment with her primary care physician. (*Id.* ¶¶ 7–8; *see also* ECF No. 42-1 at 5–7.) Given the obstacles Plaintiff Khansari faced in proving both liability and damages and the risks, uncertainties, and costs inherent in any prolonged litigation, the Court finds that settlement is in Plaintiff Khansari's best interests.

Additionally, the Court finds that Plaintiff's Khansari's $6,952.19 net award is fair and reasonable considering the documented injuries she sustained from the incident. The MC-350 provides that while riding on the escalator, Plaintiff Khansari fell backwards onto Plaintiff Motlagh. (ECF No. 41-1 ¶ 6.) As a result, Plaintiff Khansari sustained minor physical injuries (lacerations, abrasions, and contusions) and suffered pains in her nose, back, shoulder, and legs; shortness of breath; and a headache. (*Id.* ¶ 7.) Emergency room x-rays of Plaintiff Khansari's chest, legs, and pelvis "showed no evidence of facture," and CT scans "were negative for intercranial hemorrhage, facture, and hydrocephalus." (*Id.* ¶ 8.) Medical records attached to the instant motion provide that Plaintiff Khansari visited her primary care physician a week after the fall for a follow-up visit. Dr. Roozchehr Safi reported that Plaintiff Khansari "fell off escalator at Macy's last week, had no loc, was seen at ER, had normal head and cervical spine CT scans, also had xrays from chest, lumbar spine, pelvis, rt knee and left tibia with no fx, got a laceration on left leg, declined sutures,

area is tender, no oozing." (ECF No. 42-1 at 10.)  Dr. Safi further reported that the laceration on her leg was superficial, "almost 10 cm in diameter . . . with granulation tissue" with no discharge, and there was no tenderness on her cervical/thoracic and lumbar spine. (*Id.* at 12.)  For her leg pain, Dr. Safi prescribed Plaintiff Khansari with 50 mg of Tramadol Hcl to take once a day for thirty days with no refills. (*Id.*)  Medical records from subsequent appointments with Dr. Safi on August 5, 31, September 23, and November 16, 2016, do not provide that Plaintiff Khansari sustained any lasting physical injuries from the fall. (*See id.* at 17–28.)

As instructed by *Robidoux*, the Court has compared Plaintiff Khansari's $6,952.19 net award with recoveries in similar cases.  After an extensive search, the Court cannot find any case in California, this circuit, or even other circuits that closely resembles the factual scenario presented here—that is, injuries sustained by a minor or incompetent plaintiff after falling on an escalator.  And for her part, Plaintiff Motlagh has not directed the Court to any similar cases.  The Court, however, has reviewed other personal injury cases where the plaintiffs' physical injuries were non-serve.  The $6,952.19 net award here is reasonable considering the court-approved settlements in these cases. *See, e.g.*, *M.W. v. Safeway, Inc.*, CASE NO. 2:18-cv-01404-BAT, 2019 WL 4511927 (W.D. Wash. Sept. 19, 2019) (finding fair and reasonable a $5,024.77 net settlement for the personal injury claims of a minor plaintiff who was struck in the head by shopping carts and the minor suffered headaches after the incident but no physician opined "that the shopping cart blow caused headaches beyond the immediate time of the incident"); *Progressive N. Ins. Grp. v. Perry*, Case No.: 3:17-cv-00725-MMD-WGC, 2018 WL 5114137 (D. Nev. Oct. 19, 2018) (finding fair and reasonable an $8,685.50 general damages settlement for the personal injury claims of a minor plaintiff involved in a car accident where the minor was discharged from the hospital without any recommended follow-up care); *Leon v. United States*, Case No. 1:09-cv-00439 JLT, 2011 WL 13239534 (E.D. Cal. Mar. 29, 2011) (finding fair and reasonable an $8,500 net settlement for the personal injury claims of a minor plaintiff involved in a car accident
///

where the minor's injuries included a bruised forehead and temporary post-traumatic stress disorder).

Finally, to the extent California law requires the Court to assess the fairness of Plaintiff Khansari's net settlement award by comparing it to Plaintiff Motlagh's, the Court recognizes that Plaintiff's Khansari net award is less than Plaintiff Motlagh's. *See, e.g.*, *Lincoln Mil. Prop. Mgmt. LP*, 2020 WL 5587488, at *5 (applying California law and acknowledging the differences between the minor plaintiff's settlement award and the settlement awards of the adult plaintiffs). The settlement agreement executed between Plaintiff Motlagh and Defendants is not before the Court, but the MC-350 and Plaintiff Motlagh's declaration provide that Defendants settled with her for $42,500. (ECF Nos. 41-1 ¶ 12; 41-2 ¶ 3.) The MC-350 further provides that Mr. Rahbari received $21,973.09 in attorney's fees and costs from the $42,500 gross settlement, leaving Plaintiff Motlagh with a net award of $20,526.91. (ECF No. 41-1 ¶ 18(c).) Although Plaintiff Motlagh received a considerably greater net award, the difference between the net awards fairly reflects the fact that Plaintiff Khansari's physical injuries from the incident were less severe than Plaintiff Motlagh's. In her declaration in support of her Motion for Guardian *Ad Litem*, Plaintiff Motlagh provides that she suffered more serious injuries from the fall, including "fractures and disc bulges in [her] lumbar spine," from which she "still suffer[s] . . . extreme pain and discomfort." (ECF No. 38-1 ¶ 4.) Considering the severity of Plaintiff Khansari's physical injuries as set forth in the MC-350 and the medical records before the Court, the Court finds the $6,952.19 net settlement award fair and reasonable when compared to Plaintiff Motlagh's.

Based on the foregoing, the Court finds that the settlement is in the best interests of Plaintiff Khansari and the $6,952.19 net award is fair and reasonable.

**B.     Attorney's Fees and Costs**

    1.     <u>Legal Standard</u>

In addition to approving the incompetent plaintiff's settlement itself, courts applying California law must also approve any attorney's fees and costs to be paid from the

settlement award. Cal. Prob. Code § 3601; Cal. R. Ct. 7.955(a)(1). The California Rules of Court direct that attorney's fees for settling an incompetent's claims are assessed by "a reasonable fee standard." Cal. R. Ct. 7955(a)(1). The Rules provide courts with an unexhaustive list of factors to consider when determining the reasonableness of a fee request, including, *inter alia*:

- The amount of the fee in proportion to the value of the services performed;
- The novelty and difficulty of the questions involved and skills required;
- The amount involved and the results obtained;
- The nature and length of the professional relationship between the attorney and the representation of the minor or the person with a disability;
- The experience, reputation, and ability of the attorney performing the legal services;
- The time and labor required;
- Whether the fee is fixed, hourly, or contingent; and
- If the fee is contingent, the risk of loss borne by the attorney, the amount of costs advanced by the attorney, and the delay in payment of fees and reimbursement of costs paid by the attorney.

Cal. R. Ct. 7.955(b). Any motion for approval of an incompetent's settlement that includes a request for fees must be supported by a declaration from the requesting attorney that addresses the relevant Rule 7.955(b) factors. Cal. R. Ct. 7.955(c).

In instances where a contingency fee is requested, courts in this District and other Ninth Circuit districts have followed a California presumption that a contingency fee award of 25% is reasonable for the representation of a minor plaintiff and any greater percentage requires a showing of good cause and extraordinary services. *E.g.*, *S.A.C. v. County of San Diego*, Case No.: 17-cv-01893-LAB-BLM, at 2020 WL 6559139, *4 (S.D. Cal. Nov. 9, 2020); *Lincoln Mil. Prop. Mgmt. LP*, 2020 WL 5587488, at *6; *DeRuyver v. Omni La Costa Resort & Spa, LLC*, Case No.: 3:17-cv-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020); *R.N. v. United States*, Case No.: 3:17-cv-1583-L-BGS, 2019 WL 6724338, at *3 (S.D. Cal. Dec. 11, 2019), *adopted by* 17-cv-1583-L-BGS, ECF No. 46

(S.D. Cal. Jan. 6, 2020); *see also Mitchell*, 2013 WL 1680641, at *2 ("It has been the practice in the Eastern District of California to consider 25% of the recovery as the benchmark for attorney fees in contingency cases for minors, subject to a showing of good cause to exceed that rate."). Courts, however, must also "give consideration to the terms of any representation agreement made between the attorney and the representative of the minor or person with a disability and must evaluate the agreement based on the facts and circumstances existing at the time the agreement was made." Cal. R. Ct. 7.955(a)(2).

    2.    <u>Discussion</u>

In the MC-350, Plaintiffs' counsel, Mr. Rahbari, requests $5,038.47 in fees for representing Plaintiff Khansari. (ECF No. 41-1 ¶ 14(a).) In his declaration, Mr. Rahbari provides the following in support of his fee request: He agreed to represent Plaintiffs on a contingency basis with "no assurance that [Plaintiffs] would be able to recover any funds relating to the incident." (ECF No. 41-3 ¶ 3.) During his first meeting with Plaintiffs, he advised them of the "nature and difficulties of these types of cases . . . including the issue of liability." (*Id.* ¶ 4.) At this first meeting, Plaintiff Khansari appeared "alert and oriented and seemed to understand[] [their] discussion[]." (*Id.* ¶ 3.)

Throughout the four years that Mr. Rahbari represented Plaintiffs, his office was "in constant communication[]" with Plaintiffs, and "[o]n a few occasions, [he] personally visited them at their residence." (*Id.* ¶ 6.) Mr. Rahbari also communicated and met with members of Plaintiffs' family. (*Id.* ¶ 10.) Legal services provided by Mr. Rahbari include obtaining and reviewing various medical records, submitting a demand package to Defendant Macy's, filing the instant case in San Diego Superior Court, serving and responding to discovery requests, preparing for and attending the ENE, filing the Motion for Guardian *Ad Litem*, and filing the instant motion and related documents. (*Id.* ¶¶ 7–11.) During the hearing, Mr. Rahbari spoke to his legal experience and informed the Court that his practice has focused almost exclusively on plaintiff-side personal injury cases in his eighteen years as a practicing attorney.

///

Per the Fee Agreement executed between Plaintiff Khansari and Mr. Rahbari, Mr. Rahbari is entitled to 40% of any gross recovery obtained for Plaintiffs after a lawsuit is filed and 45% "if the matter proceeds to within 30 days of the time of the trial date." (ECF No. 41-5 ¶ 4.)  Although this case settled before proceeding within 30 days of trial,[2] Mr. Rahbari declares that, per the Fee Agreement, his office is entitled to 45% of Plaintiff Khansari's $12,500 gross recovery, or $5,625. (ECF No. 41-3 ¶ 12.)  Mr. Rahbari further declares that he agreed to a discount of $586.53,[3] and thus, requests $5,038.47 in fees, or 40.3% of the $12,500 gross recovery. (*Id.*)  During the hearing, the Court brought to Mr. Rahbari's attention that his request for a 45% fee award was not in line with the Fee Agreement, as the case did not proceed within 30 days of trial.  Mr. Rahbari agreed that the 45% request in the MC-350 and his declaration was an oversight and orally amended his request to 40% or any other percentage the Court found reasonable.

Considering the relevant factors set forth in California Rule of Court 7.955(b), Mr. Rahbari's declaration, and Mr. Rahbari's statements during the hearing, the Court finds that a 40% contingency fee is reasonable and warranted.  Mr. Rahbari is an experienced personal injury attorney who has represented Plaintiffs in this matter since 2016.  As described above, the path to recovery in this case was uncertain and filled with several challenges, and therefore, the risk of loss borne to Mr. Rahbari was not insignificant. Although a 40% fee is above California's 25% presumptive limit, good cause exists for the 15% increase, as Plaintiff Khansari's dementia necessitated more work than Mr. Rahbari

---

[2]   No trial date was ever set in this case, and the last date set by the Scheduling Order was the January 13, 2020 Pretrial Conference. (ECF No. 12 ¶ 16.)  The parties filed a Notice of Settlement on March 20, 2019, well before the Pretrial Conference. (ECF No. 23 at 2.)  Therefore, as case did not proceed within 30 days of trial, Mr. Rahbari is owed a 40% contingency fee per the Fee Agreement.

[3]   Mr. Rahbari's declaration states that he advanced costs in the amount of $547.21 (ECF No. 41-3 ¶ 12), whereas the MC-350 provides for costs in the amount of $547.81 (ECF No. 41-1 ¶ 6).  The Court's analysis uses the amount provided in the MC-350.

could have originally anticipated. Mr. Rahbari explained at the hearing, and provides in his declaration, that Plaintiff Khansari did not show any indication of mental decline and appeared competent when he first met and agreed to represent her in 2016. Additionally, at that time, both Plaintiffs were residing in California. By the time the case settled in 2019, Plaintiff Khansari had not only relocated to Iran, but her dementia had progressed to the point where she could not longer adequately represent herself in this matter. Plaintiff Khansari's mental decline necessitated that Mr. Rahbari prepare a motion for appointment of a guardian *ad litem* and the instant motion for settlement approval. The $5,000 fee requested by Mr. Rahbari is a modest amount given the services he provided Plaintiff Khansari over the past four years and the unanticipated motion practice required to finalize the case.

And, as instructed by California Rule of Court 7.9559(a)(2), the Court has considered the Fee Agreement executed between Mr. Rahbari and Plaintiff Khansari and evaluated it "based on the facts and circumstances existing at the time the [it] was made." Because Plaintiff Khansari was seemingly competent when she agreed to the 40% contingency fee, the Court finds that the Fee Agreement is fair and lends to the reasonableness of Mr. Rahbari's fee request.

Lastly, Mr. Rahbari requests $547.81 in costs advanced from obtaining Ms. Khansari's medical records, serving process, and mailing discovery requests and responses. (ECF No. 41-1 ¶ 14(b).) Mr. Rahbari declares that his office has not "charged for any incidental costs, such as copying of medical and other records." (ECF No. 41-3 ¶ 12.) At the hearing, Mr. Rahbari informed the Court that he equally apportioned service of process and discovery fees between Plaintiff Khansari and Plaintiff Motlagh. The Court finds Mr. Rahbari's requested costs reasonable.

For the foregoing reasons, the Court finds Mr. Rahbari's request for $5,000 in attorney's fees and $547.81 in costs reasonable and approves their deduction from Plaintiff Khansari's gross settlement award.

///

C.  **Method of Disbursement**

    1.  <u>Legal Standard</u>

This District's Civil Local Rules require that any money recovered by an incompetent who resides in California be disbursed in accordance with the California Probate Code, regardless of whether the incompetent's claims arise under state or federal law. CivLR 17.1(b)(1). The Civil Local Rules otherwise require that any money recovered by an incompetent who does not reside in California be disbursed in accordance with the Civil Local Rules, which set forth several acceptable distribution methods similar to the California Probate Code's. CivLR 17.1(b)(2)–(4).

The California Probate Code provides a variety of acceptable disbursement methods for an incompetent's settlement funds. *See* Cal. Prob. Code §§ 3600 *et seq*. One such statutorily-approved method is disbursement of the settlement funds directly to the appointed conservator of the incompetent's estate. Cal. Prob. Code § 3611(a). Should a party request this disbursement method, the Civil Local Rules provide that "a certified copy of the guardianship letters and a state court certificate must be filed with the clerk prior to any distribution to the guardian unless otherwise ordered by the court." CivLR 17.1(b)(2). Another statutorily-approved method is disbursement of the settlement funds on any conditions that the court in its discretion determines to be in the best interests of the incompetent, if the funds do not exceed $20,000. Cal. Prob. Code § 3611(d).

    2.  <u>Discussion</u>

Here, the MC-350 indicates that, although a conservator of Plaintiff Khansari's estate has yet to be appointed, the net settlement award will be paid directly to a conservator. (ECF No. 41-1 ¶ 19(b)(1).) This proposed method of disbursement is acceptable, as it is permitted by California Probate Code § 3611(a) and the Civil Local Rules. However, pursuant to Civil Local Rule 17.1(b)(2), the Court could not distribute any funds until a conservatorship action is filed and approved by a state court and a copy of the necessary documents are filed with the Court.

///

During the hearing, Mr. Rahbari confirmed that a conservatorship of Plaintiff Khansari's estate had not yet been established by a state court. Mr. Rahbari, however, informed the Court that he erred in checking the box on the MC-350 that the settlement funds would be distributed to a conservator, and Plaintiffs did not intend to create a conservatorship of Plaintiff Khansari's estate. Instead, Plaintiffs desire to have the settlement funds distributed directly to the guardian *ad litem*, Plaintiff Motlagh, a method not specifically provided for under the California Probate Code or the Civil Local Rules. However, pursuant to § 3611(d) of the California Probate Code, a court could, in its discretion, distribute funds to an incompetent's guardian *ad litem* if (1) the settlement does not exceed $20,000 and (2) distribution in that manner is in the best interests of the incompetent.

Here, Plaintiff Khansari's $12,500 settlement award is less than $20,000, so the Court may distribute the funds directly to Plaintiff Motlagh for Plaintiff Khansari's benefit if the Court determines that doing so would be in Plaintiff Khansari's best interests. As mentioned above, Plaintiff Motlagh is the daughter of Plaintiff Khansari. In her declaration in support of her Motion for Guardian *Ad Litem*, Plaintiff Motlagh provides that she has been her mother's primary caretaker since September 2018, when she took her mother to their residence in Tehran, Iran to properly care for her. (ECF No. 38-1 ¶ 2.) Although Plaintiff Khansari has three other children, Plaintiff Motlagh is the only member of their immediate family able to provide the "constant and continuous care" Plaintiff Khansari requires. (*Id.* ¶¶ 3–4.) Moreover, Plaintiff Motlagh has power of attorney for Plaintiff Khansari in Iran and handles all her finances. (*Id.* ¶ 5.) At the hearing, Plaintiff Motlagh further spoke to the care she provides for her mother and informed the Court that she needed to hire a live-in caregiver to help her take care of her mother.

In light of the foregoing, the Court determines that it is in Plaintiff Khansari's best interests that her settlement funds be directly distributed to Plaintiff Motlagh. Disbursing the funds directly to Plaintiff Motlagh is the most practical method of disbursement here, as Plaintiff Motlagh already handles Plaintiff Khansari's finances as her attorney-in-fact in

16

19-cv-00042-JLB

Iran and is her sole familial caretaker. Thus, pursuant to § 3611(d) of the California Probate Code, the Court exercises its discretion and approves of the disbursement of Plaintiff Khansari's settlement funds directly to Plaintiff Motlagh to use solely for Plaintiff Khansari's benefit.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Settlement Approval (ECF No. 41) and **ORDERS** as follows:

1. No later than **December 30, 2020**, Defendant SEC shall disburse its portion of Plaintiff Khansari's settlement award ($2,500) to Plaintiffs' counsel. Defendant Macys has already disbursed its portion of Plaintiff Khansari's settlement award ($10,000) to Plaintiffs' counsel. (ECF No. 41-3 ¶ 17.)

2. From Plaintiff Khansari's $12,500 gross settlement award, Plaintiffs' counsel may deduct $5,000 for attorney's fees and $547.81 for costs.

3. Pursuant to California Probate Code § 3611(d), Plaintiffs' counsel shall distribute Plaintiff's Khansari's $6,952.19 net settlement award directly to Plaintiff Motlagh to use solely for Plaintiff Khansari's benefit.

4. A Joint Motion for Dismissal shall be electronically filed on or before **January 27, 2021**.

5. If a Joint Motion for Dismissal is not filed on or before **January 27, 2021**, then a telephonic, counsel-only Settlement Disposition Conference shall be held on **January 29, 2021**, at **1:45 PM** before Magistrate Judge Jill L. Burkhardt. For purposes of the Conference, all participating counsel shall call the Court's teleconference line at (877) 873-8018 and use access code 9930765.

///
///
///
///
///

5. If a Joint Motion for Dismissal is filed on or before **January 27, 2021**, then the Settlement Disposition Conference shall be vacated without further court order.

Dated: December 15, 2020

*Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge